UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------X

Franklin Mascol, et al.,

                    Plaintiffs,              CV-03-3343 (CPS)
                    - against -              MEMORANDUM
                                             OPINION AND
                                             ORDER

E&L Transportation, Inc., et al.,

                    Defendants.

-----------------------------------------X

SIFTON, Senior Judge.

    This is a civil action brought by six named plaintiffs in

their individual capacities and on behalf of others similarly

situated for claims under sections 7(a), 11(c), 15(a)(2)(5), 16

and 17 of the Fair Labor Standards Act, as amended (29 U.S.C.

§§ 207(a), 211(c), 215(a)(2)(5), 216 and 217 (2004)) ("FLSA") and

claims under Article 19 of the New York State Labor Law ("NYS

Labor Law") and its implementing regulations, N.Y. Comp. Codes R.

& Regs. tit. 12, § 142-2.2 (2004).  The complaint, as amended,

alleges that defendants failed to pay plaintiffs – current and

former ambulette drivers – overtime pay at a rate of time and one

half for hours worked over 40 hours per week in violation of FLSA

and NYS Labor Law.  Plaintiffs seek unpaid overtime wages from

July 9, 2000 through the date of judgment, as well as liquidated

damages, pursuant to the FLSA and unpaid overtime from July 9, 1997 through the date of judgment and liquidated damages equal to 25% of the unpaid wages pursuant to state law. In addition, plaintiffs seek an injunction and declaratory relief and attorneys' fees.

On January 27, 2004, the Court dismissed plaintiffs' claims for declaratory and injunctive relief under the FLSA and granted plaintiffs' motion to permit the action to proceed as a representative action under 29 U.S.C. § 216(b) with respect to the FLSA claims. The court ordered (1) defendants to turn over the names and addresses of potential plaintiffs by March 2, 2004, (2) plaintiffs to send notice to potential class members by April 2, 2004, and (3) potential plaintiffs to return notices by May 28, 2004.

Plaintiffs, on consent, amended the complaint on March 17, 2004 to add Elbrus Transportation, Inc. ("Elbrus"),[1] Boris Shamiloff, Arkadi Ashurov, and Eduard Pardilov, as successors in interest to the original named defendants E&L Transportation, Inc., E&L Transportation, Inc. d/b/a Community Transport, Community Transportation, Inc., LCH Transportation Corp., Ely

---

[1]     Elbrus purchased the assets of the original defendants in March of 2004.

Matalon, and Leon Krisinovsky.[2]  On March 29, 2004, the Court

(1) extended its January 27, 2004 order to apply to the new

defendants, (2) gave the new defendants until April 1, 2004 to

turn over the names and addresses of potential plaintiffs; (3)

gave the plaintiffs until April 15, 2004 to send out notices; and

(4) required the notices be received by June 15, 2004.  On April

13, 2004, the March 29, 2004 order was again modified to (1) give

defendants until April 30, 2004 to turn over the names and

addresses, (2) give the plaintiffs until May 15, 2004 to send out

notices; and (3) require that return notices be received by July

15, 2004.

On May 9, 2005 this Court granted plaintiffs' motion for

partial summary judgment on liability under the FLSA and NYS

Labor Law.  On June 7, 2005, defendants filed a Notice of Appeal

to this decision.[3]

---

[2]    The complaint names Leon Krisinovsky.  The correct spelling would
appear to be Kryzhanovsky.

[3]    Although the filing of a notice of appeal generally divests
jurisdiction from the district court and confers jurisdiction upon the
courts of appeals, pursuant to 28 U.S.C. § 1291, "the jurisdiction of
the federal courts of appeals is limited to appeals from final
decisions of the district courts." *Savino et al. v. Computer Credit,
Inc.*, 173 F.R.D. 346, 350 (E.D.N.Y. 1997)(citing *United States v.
Rogers*, 101 F.3d 247, 251 (2d Cir. 1996)).  However, divestiture of
jurisdiction is not a per se rule but "a judicially crafted rule
rooted in the interest of judicial economy".  *Rogers*, 101 F.3d at 251,
        Where, as here, a party appeals from an interlocutory order that
does not expressly direct judgment pursuant to F.R.C.P. 54(b), nor
authorize an interlocutory appeal pursuant to 28 U.S.C. § 1292(b),
"such an appeal does not deprive [this Court] of the power to

Plaintiffs now move for class certification pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure ("FRCP") with respect to their New York State ("NYS") Labor Law claim. Plaintiffs also seek to waive, on behalf of the putative state law class, any claim for liquidated damages.[4] In addition, plaintiffs request that Tyrone Ladson be joined to the FLSA action despite his untimely opt-in notice.

For the reasons set forth below, the motion for class certification is granted for a class of ambulette drivers not paid overtime wages, who worked for defendants at any time during the six years preceding the commencement of this action to the present who expressly waive any claim to any liquidated damages

---

proceed." *Hoffenberg v. United States*, 2004 U.S. Dist. LEXIS 20668, * 6 (S.D.N.Y. October 18, 2004)(citing *Leonhard v. United States*, 633 F.2d 599, 610 (2d Cir. 1980)(internal citations omitted)(finding "no efficiency to be gained by allowing a party to halt the district court proceedings by filing a plainly unauthorized notice"); *See also Liberty Mutual Ins. Co. v. Wetzel*, 424 U.S. 737, 742 (1976); *Rogers*, 101 F.3d at 251; *Savino*, 173 F.R.D. at 351.

Accordingly, this Court finds that it has jurisdiction to decide the motions presently before it, notwithstanding defendant's notice of appeal. *See Savino*, 173 F.R.D. at 350-351; *See also Weisman v. Darneille*, 79 F.R.D. 389, 391 (S.D.N.Y. 1978)("Where a notice of appeal refers to an order which is clearly non-appealable, the mere taking of the appeal is insufficient to divest the district court of jurisdiction. In such circumstance, the district court may ignore the notice of appeal and may proceed with the case.").

[4] NYS Law forbids class actions for liquidated damages unless a class action is authorized by the statute giving rise to the cause of action. N.Y. C.P.L.R. § 901(b) (2004). The NYS Labor Law in question here does not do so. N.Y. Lab. Law § 663 (2002).

under NYS Labor Law § 663.[5]  Plaintiffs are ordered to give

notice to putative class members pursuant to FRCP 23(c)(2)(B),

including a clear and concise explanation of the nature of any

potential liquidated damages claim under the NYS Labor Law § 663,

and the implications of the waiver of such damage claim.

Finally, plaintiffs' request to join Tyrone Ladson to the FLSA

action despite his untimely opt-in notice is granted.

## Background

The following facts are drawn from the complaint and the

papers submitted with this motion and are undisputed unless

otherwise noted.

Plaintiffs' motion for class certification under FRCP 23(a)

and (b)(3)[6] for their NYS Labor Law claim describes the class

they seek to represent as:

> former and present ambulette drivers and
> helpers that were employed by the Defendants
> during the six (6) years preceding the filing
> of the Complaint through the present, and who
> regularly worked over forty (40) hours a week
> for the Defendant, but who were not paid
> overtime pay at a rate of time and one-half
> as required by FLSA, Section 7 (29 U.S.C. §
> 207) and Article 19 of the NYS Labor Law.

---

[5]    A six year statute of limitations applies to plaintiffs' labor
law claims.  NYS Labor Law § 663(3).

[6]    Plaintiffs mistakenly state that they seek certification pursuant
to FRCP 23(g), which governs appointment of class counsel.  The
mistake is made repeatedly in their papers. (*E.g.* Pls. Mem. Supp. Mot.
Partial Summ. J. at 2.)

(Pls. Mem. Supp. Mot. Partial Summ. J. at 2-3.) Plaintiffs'
counsel, Barry I. Levy and Elan R. Kandel, have over the last
five years handled numerous labor litigation cases in the
Southern and Eastern District of New York. (Decl. of Barry I.
Levy ¶ 3.)

Despite this experience, plaintiffs' counsel fail to
identify clearly the class they seek to certify. Plaintiffs
include "helpers" in their description of the plaintiff class
quoted above, but only refer to "ambulette drivers" in their
discussion of whether plaintiffs meet the requirements of FRCP
23(a) and (b)(3).[7] Defendants maintain that the plaintiffs
should not be allowed to certify a class that includes helpers
and mechanics because of the differences in their contractual
terms of employment.[8] (*See* Defs.' Aff. Opp'n Pls. Mot. for Summ.

_____

[7]    *See* Pls. Mem. Supp. Mot. Partial Summ. J at 9 ("based upon a
review of the Defendants' payroll records, the putative class consists
of at least 90 present and former ambulette drivers"); *id* at 14 ("This
action is based solely upon the Defendants' policy of requiring their
present and former employees (ambulette drivers) to work overtime
hours without proper compensation"). Named plaintiff Franklin Mascol,
who is a ambulette driver, has declared that the only difference
between himself "and other potential class members is the hours they
worked and their salaries." (Decl. of Franklin Mascol ¶ 10.)

[8]    Defendants state that under a Collective Bargaining Agreement
("CBA") negotiated with the International Brotherhood of Teamsters
Local 531, a newly hired ambulette driver was hired to work a salaried
sixty hour week that broke down to $6.43 an hour for the first forty
hours of work and then overtime pay at $9.64 an hour for the next
twenty hours of work. (Defs.' Aff. Opp'n ¶ 34.) Plaintiffs dispute
that any overtime was included in the weekly salary of the drivers.
(Pls. Mem. Further Supp. at 23.) Defendants maintain that helpers
were members of Local 531 but were not assigned 60 hour work weeks and

J. and in Supp. of Defs.' Notice of Cross Mot. for Dismissal,
hereinafter "Defs.' Aff. Opp'n", ¶¶ 153-63.) In response,
plaintiffs assert in a footnote that they are not "seeking to
represent helpers and mechanics employed by the Defendants
relative to either Plaintiffs' FLSA claims or proposed New York
State Labor Law class action claims." (Pls.' Mem. Further Supp.
Mot. Partial Summ. J., hereinafter "Pls.' Mem. Further Supp.", at
2 n.1.) Nevertheless, the payroll accounting report ("Ennis
Report") submitted by the plaintiffs to demonstrate the potential
numerosity of the putative class includes eight helpers and one
mechanic. (*See* Defs.' Aff. Opp'n ¶¶ 153-63; Decl. of Barry I.
Levy, Exhibit A at 1-64, hereinafter "Ennis Report".)

        The Ennis Report is sixty-four pages long, gives no job
description to accompany the listed names, and includes much
redundancy. Eliminating eight helpers and one mechanic from the
list, fifty-four ambulette drivers are listed in the report. (*See*
Ennis Report at 1-64.) This number includes the six named
plaintiffs and all the ambulette drivers who opted in with
respect to the FLSA claim.[9]

---

were paid over time for all work over 40 hours. (Defs.' Aff. Opp'n ¶¶
47-48.)

[9]    Plaintiffs and Defendants differ in their totals of the number of
FLSA opt-in notices filed with the Court. The correct number of FLSA
ambulette driver plaintiffs who opted in is twenty-seven, inclusive of
the named plaintiffs. A survey of the attachments to the ECF Docket
reveals thirty FLSA opt-in notices. (*See attachments to* ECF Docket at

## Discussion

This Court has jurisdiction over the pendent NYS Labor Law claim under 28 U.S.C. § 1367(a).

## Class Certification

District Courts have considerable discretion with respect to class certification. *See Califano v. Yamasaki*, 442 U.S. 682, 703 (1979); *Woe by Woe v. Cuomo*, 729 F.2d 96, 107 (2d Cir. 1984) ("It is often proper . . . for a district court to view a class action liberally in the early stages of litigation"). The Court of Appeals will only overturn a class certification for abuse of discretion and gives FRCP 23 a liberal construction. *Marisol v. Giuliani*, 126 F.3d 372, 375, 377 (2d Cir. 1997). When considering a motion for class certification, a court should accept the allegations of the complaint as true, avoid an inquiry into the merits, and may consider material beyond the pleadings. *Monaco v. Stone*, 187 F.R.D. 50, 59 (E.D.N.Y. 1999); *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 85 (S.D.N.Y. 2001) (granting class certification on pendent NYS Labor Law claim for low wage workers allegedly not

# 38, 40-44.) Two of the notices currently attached to ECF Docket # 42 are mistakenly duplicative of two of the attached entries to ECF Docket #40. Notice from Jeffrey Ferguson and Clifford Jean Pierre should be attached instead. (*See* Letter from Kandel to Judge Sifton of 10/26/2004 at 2). Defendants allege that two of these opt-in plaintiffs were helpers and one a dispatcher. (Defs.' Aff. Opp'n ¶¶ 231-32.) Subtracting these three non-ambulette drivers, the Court arrives at the figure of twenty-seven opt-in FLSA ambulette drivers.

paid overtime).

Plaintiffs bear the burden of proof on a motion for class certification under FRCP 23. *Monaco*, 187 F.R.D. at 59. First, Plaintiffs must demonstrate that under FRCP 23(a) the putative class has: (1) sufficient numerosity to make individual joinder impracticable; (2) commonality of questions of law or fact; (3) typicality of claims and; (4) representatives who fairly and adequately protect the interests of the class. (FRCP 23(a).) Second, because Plaintiffs move for class certification under FRCP 23(b)(3), they must show that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

### Numerosity

Plaintiffs satisfy the numerosity requirement of FRCP 23(a)(1). The numerosity of a class is a gauge of the impracticability of individual joinder of all the potential class members but is not necessarily dispositive of the impracticability of joinder. *See* 7A Charles Alan Wright et al., *Federal Practice and Procedure* § 1762 (1986) (collecting cases with a wide range of class certifications and denials based on

-9-

varying numerosity).  In the Second Circuit a class of forty presumptively meets the numerosity requirement.  *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). Only some evidence is required to demonstrate the numerosity of a putative class, and this evidence need not be exact in number but merely needs to consist of a reasonable class estimate.  *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993).

In the present case, the Ennis Report submitted by Plaintiffs reveals that there are approximately fifty-four ambulette drivers who are potential class members.  The defendants confuse the issue in asserting that because there are only twenty-seven members of the FLSA collective action, the putative class for the NYS Labor Law claim is not so numerous as to render individual joinder impracticable. (*E.g.*, Defs.' Reply Mem. Supp. Defs.' Cross Mot. Dismiss and in Further Opp'n to Pls.' Mot. Partial Summ. J. and Class Certification, hereinafter "Defs.' Reply Mem. Further Opp'n", at 7-9.)  The issue is not how many collective action members there are under the FLSA claim, but what is a reasonable estimate of the putative class size for the NYS Labor Law claim.  While defendants challenge the accuracy of the damages analysis in the Ennis Report, about which the Court expresses no opinion here, they do not challenge the number of ambulette drivers listed in the report beyond pointing out

that there are nine persons listed in the Ennis Report who are
not ambulette drivers.  The Court has subtracted these nine from
its total of ambulette drivers listed in the Ennis Report. (*Id.*)
The Court finds the resulting number of fifty-four potential NYS
Labor Law claim class members to be a reasonable, albeit inexact,
estimate of the size of the putative class.  Because of this, the
Defendants' alternative request for a delay in class
certification to allow for further discovery as to the size of
the putative class is denied.  (*See, e.g.*, *id.* at 1.)

The presumption based solely on a head count, however,
needs to be considered in light of the totality of the
circumstances of the particular case, because impracticability of
joinder is not just a matter of numbers.  *Robidoux* 987 F.2d at
936 (citing *Demarco v. Edens*, 390 F.2d 836, 845 (2d. Cir. 1968)).
Relevant factors include: judicial economy; the geographical
dispersion of class members; the financial resources of class
members and their ability to bring suit individually; and
"requests for prospective injunctive relief which would involve
future class members."  *Id.*

Judicial economy favors class certification in this
case.  There is no reason to think that the number of opt outs is
likely to be substantial.  Hence, the preclusive effect of a
class action will avoid future duplicative litigation and

preserve judicial resources both on the federal and state level.

Although the putative class members are not geographically dispersed, this factor is counter-balanced by practical considerations concerning the ability and willingness of putative class members to file suit individually. The amounts in controversy are not large when taken singly, and it may be not worthwhile for an individual plaintiff to pursue litigation over any allegedly unpaid overtime pay since filing and attorney fees could easily exceed any recovery. A class action consolidates all the plaintiffs' claims and thereby lowers the overall cost of litigation for the putative class members through the efficiency resulting from shared counsel.

Finally, because prospective injunctive relief will not compensate the putative class for lost compensation, the Court is satisfied that the potential numerosity of the putative class is sufficient to make individual joinder of all the members impracticable.

### Commonality

Plaintiffs satisfy the commonality requirement of FRCP 23(a)(2). A single common question of law or fact may satisfy this rule. *Monaco*, 187 F.R.D. at 61; *Ansoumana*, 201 F.R.D. at 86. The common question of fact here is whether the plaintiff class members were denied overtime pay. A common question of law

-12-

is whether NYS Labor Law was violated by this alleged failure to pay overtime. *See Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330, 343 (S.D.N.Y. 2004) ("The legal theory set forth in Noble's Complaint is common to all class members--that this alleged failure to pay overtime violates New York's labor law. Accordingly, the commonality requirement is satisfied.").

Defendants argue that an individualized inquiry into each plaintiff's overtime claim is necessary, and that, "[a] conclusion as to one member of the class will not be determinative or even relevant to that of any other member" and therefore there is no commonality. (Defs.' Mem Opp'n Pls.' Mot. Partial Summ. J., hereinafter "Defs.' Mem. Opp'n", at 10.) This is incorrect. Plaintiff class members wages are governed by a common contract clause,[10] and resolution of the issue of whether the wage calculation under this clause included overtime will necessarily determine the relevant wage calculation for all class members. (*See* Defs.' Ex. C, at 9). Therefore, the commonality requirement of FRCP 23(a)(2) is satisfied.

### **Typicality**

---

[10]    There is an issue whether the original defendants' successor in interest was bound by the terms of the collective bargaining agreement. (*See* Defs.' Mem. Opp'n at 19-20.) Should the original defendants' successor in interest not be bound by the collective bargaining agreement, those ambulette drivers not working under the agreement may be split off as a subclass. *See* Fed. R. Civ. P. 23(c)(4) ("a class may be divided into subclasses").

Plaintiffs satisfy the typicality requirement of FRCP 23(a)(3), which requires the claims of the class representatives to be typical of the class. Typicality is satisfied if similar legal arguments are used to prove each class members' claim, and if each class members' claim arises from the same course of events. *Robidoux*, 987 F.2d at 936; *Monaco*, 187 F.R.D. at 62; *Ansoumana*, 201 F.R.D. at 86. Here, the class representatives are alleging that they were not paid overtime in violation of NYS Labor law. The same legal and factual claims are being made for each individual class member. Therefore, the typicality requirement is satisfied.[11]

### Adequacy of Representation

The plaintiffs satisfy the requirements of FRCP 23(a)(4), which requires that "the representative parties will fairly and adequately protect the interests of the class. The adequacy inquiry has two parts: (1) Class counsel must be "'qualified, experienced and generally able to conduct the litigation'", *Marisol*, 126 F.3d at 378 (quoting *In re Drexel Burnham Lambert*, 960 F.2d 285, 291 (2d Cir. 1992)); and (2) "Plaintiffs must also demonstrate that there is no conflict of interest between the named plaintiffs and other members of the

---

[11]     Defendants argue that typicality is not met because helpers and mechanics performed different tasks than ambulette drivers. (Defs.' Mem. Opp'n at 12.) Because the putative class will only include ambulette drivers, this argument is irrelevant.

plaintiff class." *Id.*

Defendants challenge the qualifications of plaintiffs'
counsel by citing the allegedly poor quality of plaintiffs'
counsels' work and their alleged lack of experience. (*See, e.g.,*
Defs. Reply Mem. Further Opp'n at 11-13.) Although the Ennis
Report, upon which Defendants mainly rely to bolster their claim
that Plaintiffs' counsel is not qualified, leaves something to be
desired in terms of clarity, the Ennis Report does not
demonstrate the inadequacy of plaintiffs' counsel. The Ennis
Report is not the only submission from the plaintiffs, and the
Court is satisfied that plaintiffs' counsel is qualified on the
basis of the competency demonstrated in the Plaintiffs' pleadings
and other submissions to this Court. *See In re Frontier Ins.*
*Group, Inc. Securities Litigation*, 172 F.R.D. 31, 44 (E.D.N.Y
1997) (Nickerson, J.) (stating that a court looks beyond
reputation and to present competence in determining
qualifications of counsel). Nor does this Court find there to be
any serious question as to Plaintiffs' Counsel experience to try
this case. Plaintiffs' counsel Mr. Barry I. Levy has
satisfactorily demonstrated to this court that he and co-counsel
Mr. Kandel have the requisite experience to try this case. (*See*
Decl. of Barry I. Levy ¶ 3 (discussing experience of Mr. Levy and
Mr. Kandel); Pls.' Mem. Further Supp. at 8 n.5 (noting that Mr.

-15-

Levy has argued more than fifty cases in the Second Circuit).)

Defendants also argue that plaintiffs have not shown "that they have the financial resources to represent a class." (Defs.' Mem. Opp'n at 16-17.)  As a general rule however, the financial resources of a putative class representative should not preclude the representative from litigating for the putative class.  *See, e.g.*, *Rode v. Emery Air Freight Corp.,* 76 F.R.D. 229, 230 (W.D. Pa. 1977) ("One of the major advantages of the class action suit was intended to be the increased accessibility to the judicial system for individuals of all income levels.").  Courts have, however, found a class representatives financial resources to be a relevant factor in determining the adequacy of class representation when the ability of the class representative to finance notice to large, nationwide classes is questionable, as was the case in all of the cases defendants cite to support their argument.  *Id*.(seeking class certification for a nationwide class of female employees allegedly discriminated against by defendant); *Apanewicz v. General Motors Corp*., 80 F.R.D. 672, 675 (E.D. Pa. 1978) (seeking class certification for a class of  "all independent body shops in the United States . . . who engage in the repair of automobile and truck bodies and parts thereof who purchase crash parts"); *Ralston v. Volkswagenwerk, A. G.,* 61 F.R.D. 427, 429 (W.D. Mo. 1973) (seeking class certification for

all Volkswagen purchasers nationwide who purchased from
authorized Volkswagen dealers); *P.D.Q., Inc. v. Nissan Motor
Corp.,* 61 F.R.D. 372, 374 (S.D. Fla. 1973) (seeking class
certification for nationwide class of Datsun purchasers
purportedly numbering over 630,000).  The class at issue here
numbers approximately fifty-four persons who work in the New York
metropolitan area. Therefore, the cases defendants cite are not
on point.  Furthermore, Plaintiffs' counsel are offering their
services in the hopes of recovering costs and attorneys' fees
from the defendants.  (*See* Pls.' Mem. Further Supp. at 7-8.)[12]
Accordingly, the Court is satisfied that the financial resources
of the plaintiffs will not affect the adequacy of representation.

### Rule 23(b)(3)

In order to satisfy the requirements of FRCP 23(b)(3)
plaintiffs must demonstrate that common questions of law or fact
predominate over questions affecting only individual members, and
that a class action "is superior to other available methods for
the fair and efficient adjudication of the controversy."  Fed. R.
Civ. P. 23(b)(3).  The subsection lists four non-exclusive
factors to be considered:

---

[12]    In New York State, although an attorney may execute a contingency
contract with a client, a client is ultimately liable for the expenses
(as opposed to fees) incurred in litigation.  N.Y. Comp. Codes R. &
Regs. 22 § 1200.22 (2005).

> (A) the interest of members of the class in
> individually controlling the prosecution or
> defense of separate actions; (B) the extent
> and nature of any litigation concerning the
> controversy already commenced by or against
> members of the class; (C) the desirability or
> undesirability of concentrating the
> litigation of the claims in the particular
> forum; (D) the difficulties likely to be
> encountered in the management of a class
> action.

*Id.*

## **Predominance**

The Court finds that common questions of law and fact
predominate over individualized questions. In order to meet the
predominance requirement the plaintiff must establish that issues
of general proof predominate over issues of individualized proof.
*In Re Visa Check/MasterMoney Antitrust Litigation*, 280 F.3d 124,
136 (2d Cir. 2001). The predominant common questions in this
class action are whether defendants failed to pay their ambulette
drivers overtime wages and whether this alleged failure violated
NYS Labor Law. *See generally*, *Noble*, 224 F.R.D. at 345 (finding
FRCP 23(b)(3) predominance of common questions for pendent NYS
Labor law claim because "the gravamen of the claim is that
defendants engaged in a course of conduct that deprived employees
of their right to overtime pay."); *Ansoumana*, 201 F.R.D. at 89
("[A] single issue predominates . . . because each proposed
Plaintiff class member did substantially the same type of work,

for the same type of employer, and was assigned in the same sort of way, during the relevant time period."). The general proof required is that which demonstrates the proper method of wage calculation for all ambulette drivers; indeed, the individualized inquiry as to what, if any, overtime wages are owed is only possible once the proper general wage calculation for all ambulette drivers is determined.[13] Therefore, the Court finds that a common question of fact, and a common question of law, predominate over any individualized questions.

### Superiority

The Court further finds that the class action form is superior to alternative methods of adjudicating this controversy. The class members in this case have no strong interest in individually controlling the litigation because it is unlikely a class member would bring individual litigation because the cost of an individual lawsuit likely would exceed any overtime wage recovery. *See Noble*, 224 F.R.D. at 346 (holding a FRCP 23(b)(3) class action superior to alternative methods of adjudication because of the negative value claims of the class members).

---

[13]    Because defendants argue that the successors in interest to the original collective bargaining agreement are not bound by that agreement, it is possible that there will be two wage calculations for each subclass of ambulette drivers; those that are governed by the collective bargaining agreement, and those that are not. (*See* Defs.' Mem. Opp'n at 19-20.) The Court makes no determination at this time as to whether the collective bargaining agreement applies to the successors in interest of the original defendants.

Defendants maintain that individual joinder or "referring the plaintiffs to the grievance machinery in the collective bargaining agreement between the Union and the defendant E&L" are superior methods of adjudication to a class action in this instance.  (*See* Defs. Mem. Opp'n at 18.)  The class action in question, however, is a state claim pendent on a nearly identical Federal claim, and thus judicial and party economy are served by trying both these claims in one forum.  Duplicative presentations of proof and rebuttal in different forums under different rules will not be required.  Finally, the action in question is a straightforward one presenting no difficult case management issues greater than those posed by the collective FLSA action. *See Ansoumana*, 201 F.R.D at 89 ("the difficulties likely to be encountered in the management of the [pendent NYS Labor Law] class portion of this action are not likely to be different or greater than in the management of the [FLSA] portion of this action.")  Therefore, the class action form is the superior method of adjudication for the common questions of law and fact at issue here.

## Appointment of Class Counsel

Pursuant to FRCP 23(g), the Court appoints as Plaintiffs' class counsel Barry I. Levy and Elan R. Kandel.  The Court is satisfied that they meet the requirements of FRCP

23(g)(1)(C).  *See* Adequacy of Representation discussion *supra* pp. 12-15.

## Liquidated Damages

Defendants argue that class certification should be denied because Plaintiffs have not waived their liquidated damages claims for their NYS Labor Law claim, and NYS Labor Law does not permit class actions claiming liquidated damages unless expressly provided for by the statute giving rise to the cause of action.  *See* N.Y. C.P.L.R. § 901(b) (2004); (Defs.' Reply Mem. Further Opp'n at 13-14.)  The NYS Labor Law in question here does not do so.  *See* N.Y. Lab. Law § 663.

New York law does, however, allow for the waiver of liquidated damages claims for class action claims for overtime wages as long as putative class members are given the opportunity to opt out of the class in order to pursue their own liquidated damages claims.  *See Ansoumana*, 201 F.R.D. at 95 (citing *Pensantez v. Boyle Envtl. Servs., Inc.*, 673 N.Y.S. 2d 659, 660 (1st Dep. 1998)).  Thus, the Court grants the class certification for the class of ambulette drivers allegedly not paid overtime wages, who worked and/or are working for defendants, from six years prior to the filing of the NYS Law Claim to the present, on the condition that Plaintiffs, in their notices sent to putative class members under FRCP 23(c)(2)(B), include a clear and concise

statement that failure to opt out of the class constitutes a waiver of any claims for liquidated damages under NYS Labor Law § 663. Plaintiffs are directed to provide a clear and concise description explaining the nature of liquidated damages and the consequences of a waiver in the notice as well.

### Tyrone Ladson's Untimely FLSA Opt In Notice

The Court grants Plaintiffs' request to allow Tyrone Ladson to opt-in to the FLSA action despite his untimely opt-in notice. This Court has broad powers to add or drop parties at any stage of litigation. Fed. R. Civ. P. 21 ("Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just."); *see Soler v. G & U Inc.*, 86 F.R.D. 524, 527-28 (S.D.N.Y. 1980) (allowing additional workers to join a FLSA claim after original plaintiffs filed an amended complaint). Therefore, Tyrone Ladson is joined to the FLSA action despite his untimely notice.[14]

---

[14] Defendants claim that the FLSA opt-in notices of Jeffrey Ferguson and Clifford Jean Pierre, along with "seven or eight other notices, were not served on defendants and were not recorded in the docket sheet as received by the Court." (Letter from Hopkins to Court of 10/28/04.) There appears to have been a filing error on the ECF docket in relation to Mr. Ferguson's and Mr. Pierre's opt-in notices. Docket entry number 42 states that Mr. Ferguson's and Mr. Pierre's opt-in notices are attached, but they are not. Plaintiffs' counsel has pointed out this error to the Court and provided copies of Mr. Ferguson's and Mr. Pierre's opt in notices, and the Court finds that

## Conclusion

For the reasons discussed above, Plaintiffs motion for class certification is granted, contingent on the waiver of any liquidated damages claims under NYS Labor Law, as is Plaintiffs' motion to add Tyrone Ladson as an additional FLSA plaintiff despite his untimely opt-in notice.

The Clerk is directed to furnish a filed copy of the within to all parties and to the magistrate judge.

SO ORDERED.

Dated :    Brooklyn, New York

         June 29, 2005

                    /s/Charles P. Sifton (electronically signed)
                    United States District Judge

---

they are timely. (*See Letter from Kandel to Court* of 10/22/04 at 2.) Even if they were not, this Court could join them as parties under FRCP 21. Finally, as to the "seven or eight other notices," the Court has not included in its count of FLSA opt-in plaintiffs any records outside those recorded in the docket.